UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL LECKIE,

                              Plaintiff,

            - against -

CITY OF NEW YORK; and NEW YORK
CITY HEALTH AND HOSPITAL
CORPORATION, HHC Dentist ALLAN
MATTHEW, D.D.S, NYC DOC John-Jane
Doe Correction Officers 1-10, individually
and in their official capacities; HHC John-
Jane Doe Medical Providers 11-20,
individually and in their official capacities,

                              Defendants.

**MEMORANDUM
OPINION & ORDER**

19 Civ. 6719 (PGG) (RWL)


DARRELL LECKIE,

                              Plaintiff,

            - against -

DEBBIE NAPOLI, R.N. (Provider No. 280),
JORDAN LAGUIO, M.D (Provider No.
104), KHONDKAR RAKIB, D.D.S
(Provider No. 703), TAMMY HYATT,
RDH, and JOHN-JANE DOE 1-10 NEW
YORK STATE DEPARTMENT OF
CORRECTION AND COMMUNITY
SUPERVISION Medical Providers, and
JOHN-JANE DOE 11-20 NEW YORK
STATE DEPARTMENT OF
CORRECTION AND COMMUNITY
SUPERVISION Correction Officers,
"DOE" ADA COMPLIANCE OFFICER;
"DOE" IGP SUPERVISOR, "DOE"
DEPUTY SUPERINTENDENT FOR
PROGRAMS, "DOE" DEPUTY
SUPERINTENDENT FOR
ADMINISTRATION, "DOE" staff
members of IGRC, all defendants
individually and in their official
capacities,

                              Defendants.

21 Civ. 7212 (PGG) (RWL)

PAUL G. GARDEPHE, U.S.D.J.:

In these actions, Plaintiff Darrell Leckie asserts claims under 42 U.S.C. §§ 1983 and 1988 for deliberate indifference to a serious medical need, as well as related statutory and tort causes of action, against medical providers, correction officers, and New York State and City government entities. Leckie alleges that, while he was incarcerated at Rikers Island and in state prisons, he was denied treatment for his infected tooth, which required extraction. Leckie alleges that Defendants' delay in arranging for the extraction of his tooth caused him to suffer intense pain, and ultimately led to sepsis and to a loss of hearing in one ear.

In 19 Civ. 6719 ("Leckie I"), Leckie asserts claims against the City of New York (the "City"), the New York City Health and Hospital Corporation ("Health & Hospitals"), Dentist Allan Matthew, and John/Jane Doe correction officers and medical providers, individually and in their official capacities (collectively, the "City Defendants"). The claims in Leckie I relate to alleged mistreatment at Rikers Island. (Leckie I Second Am. Cmplt. ("SAC") (Dkt. No. 110))

In 21 Civ. 7212 ("Leckie II"), Leckie brings claims against Registered Nurse Debbie Napoli; Dr. Jordan Laguio; Dentist Khondkar Rakib, Registered Dental Hygienist Tammy Hyatt; and John/Jane Doe correction officers, medical providers, and state employees responsible for disability accommodation, individually and in their official capacities (collectively, the "State Defendants"). (Leckie II Cmplt. (Dkt. No. 5)) The claims in Leckie II relate to mistreatment in state prisons operated by the New York State Department of Correction and Community Supervision (the "DOC").

The Leckie I SAC was filed on February 24, 2021, and the City Defendants moved to dismiss on March 23, 2021, pursuant to Federal Rule of Civil Procedure 12(b)(6).

(Dkt. Nos. 110, 115)  The <u>Leckie II</u> Complaint was filed on August 27, 2021, and on April 14, 2022, the State Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and to transfer any surviving claims to the Northern District of New York. (Dkt. Nos. 5, 31)  Plaintiff moved to consolidate the two actions on April 14, 2022.  (<u>Leckie II</u> Dkt. No. 35)

This Court referred the parties' motions to Magistrate Judge Robert W. Lehrburger for a Report and Recommendation ("R&R").  (<u>Leckie I</u> Dkt. No. 124; <u>Leckie II</u> Dkt. No. 38)  On June 30, 2022, Judge Lehrburger issued a thorough 61-page R&R recommending (1) that the motions to dismiss be granted in part; (2) that the State Defendants' motion to transfer be denied; and (3) that Leckie's motion to consolidate be granted.  (R&R (Dkt. No. 129))[1]

For the reasons stated below, the R&R will be adopted in part; Defendants' motions to dismiss will be granted in part; the State Defendants' motion to transfer will be denied; and Leckie's motion to consolidate will be granted.

---

[1] The R&R appears on both the <u>Leckie I</u> and <u>Leckie II</u> dockets.  References to the R&R in this Order are to the <u>Leckie I</u> docket.

# BACKGROUND[2]

The R&R sets out the factual background and procedural history of the instant actions in detail.  (R&R (Dkt. No. 129) at 2-9)[3]  The relevant background and procedural history are briefly summarized below.

## I.   FACTUAL BACKGROUND

According to the complaints, Leckie was admitted to City custody in April 2018, and soon after complained of pain in his mouth and jaw to Doe Correction Officers and Medical Providers and to a non-defendant doctor.  There was a delay in producing Leckie for a dental appointment, but on April 24, 2018, Defendant Matthew, a dentist, examined Leckie and determined that one of his teeth required extraction.  No extraction was performed, however, despite Leckie's repeated complaints of "great pain" in his mouth and jaw.  (R&R (Dkt. No. 129) at 3; Leckie I SAC (Dkt. No. 110) ¶ 25)

Leckie was transferred to State custody on August 30, 2018, and immediately complained of jaw pain to multiple State Defendants.  (R&R (Dkt. No. 129) at 3)  Defendant Napoli, a nurse, performed an intake examination that day.  The Leckie II Complaint alleges that Defendant Napoli "failed to refer . . . [P]laintiff to a dental provider"; however, in the next paragraph, the Complaint alleges that Defendant Rakib, a dentist, and Defendant Hyatt, a dental

---

[2]  Because the parties have not objected to Judge Lehrburger's factual statement, this Court adopts it in full.  See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts [the factual statement] in full.").

[3]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

hygienist, examined Leckie the next day, August 31, 2018.  (Leckie II Cmplt. (Dkt. No. 5) ¶¶ 30-31)  Rakib and Hyatt determined that Leckie should be referred to an oral surgeon to extract tooth #31, but never made the referral.  (R&R (Dkt. No. 129) at 4)

Over the next two months, Leckie was transferred back and forth between City and State custody.  He continued to complain of pain, but was repeatedly ignored or given only palliative treatment.  (Id.)  On October 12, 2018, he saw Rakib and Hyatt again, but they gave him only over-the-counter pain medications and did not refer him to an oral surgeon.  A week later – on October 19, 2018 – Leckie "presented to the dental clinic with high fever, nausea, and inability to eat."  (Id.)  Defendants Hyatt and Laguio, a medical doctor, both saw Leckie.  Neither Hyatt nor Laguio referred Leckie to an oral surgeon.  Laguio noted Leckie's medical history – which indicated that Leckie needed to be referred to an oral surgeon for a tooth extraction – and diagnosed Leckie with a dental abscess and dental infection.  He prescribed oral antibiotics and pain medication rather than immediately referring Leckie for a tooth extraction.  (Id. at 4-5)

By October 22, 2018, Leckie's symptoms had worsened to include high fever, neck swelling, and an inability to move his jaw.  Rakib, Hyatt, and Laguio transferred Leckie to a prison infirmary.  After twelve hours in the infirmary, during which his condition worsened, Leckie was transferred to Ellenville Regional Hospital, and then Westchester Medical Center.  Leckie was diagnosed with sepsis and underwent surgery to drain his abscess.  He was intubated for two days as a result of post-operative complications.  The infection caused Leckie to permanently lose hearing in his right ear.  (Id. at 5)

After his hospitalization, Leckie was returned to City custody, and subsequently transferred back and forth between City and State custody.  While in State custody, Leckie

requested an accommodation related to his hearing loss, but the Doe disability personnel

Defendants ignored or denied his request.  (Id. at 5-6)

## II.   **PROCEDURAL HISTORY**

The Complaint in Leckie I was filed on July 18, 2019, the First Amended

Complaint was filed on December 21, 2019, and the SAC was filed on February 24, 2021.  (Dkt.

Nos. 1, 41, 110)  The City Defendants moved to dismiss the SAC on March 23, 2021.  (Dkt. No.

115)  The Complaint in Leckie II was filed on August 27, 2021.  (Dkt. No. 5)  On April 14,

2022, the State Defendants moved to dismiss and to transfer any surviving claims to the Northern

District of New York.  Leckie cross-moved to consolidate the instant actions.  (Dkt. Nos. 31, 35)

This Court referred the Leckie I motion to dismiss and the Leckie II motion to

dismiss to Judge Lehrburger for an R&R on November 19, 2021 and May 6, 2022, respectively.

(Leckie I, Dkt. No. 124; Leckie II, Dkt. No. 38)  Judge Lehrburger issued his R&R on June 30,

2022.  (Dkt. No. 129)  The State Defendants filed objections on July 14, 2022, and Leckie filed

an opposition to the State Defendants' objections on July 28, 2022.  (Dkt. Nos. 40-41)  Neither

Leckie nor the City Defendants have filed objections to the R&R.

## III.   **THE R&R'S RECOMMENDATIONS AND**
## **THE STATE DEFENDANTS' OBJECTIONS**

The Leckie I SAC asserts causes of action for negligence/medical malpractice **as**

to the City, Health and Hospitals, and the Doe Defendants; deliberate indifference in violation of

Section 1983 and failure to intervene as to all City Defendants; and intentional and negligent

infliction of emotional distress as to all City Defendants.  Leckie also asserts a Monell claim

against the City and Health & Hospitals.  (Leckie I SAC (Dkt. No. 110) at 6-11)  The Leckie II

Complaint asserts causes of action for deliberate indifference and failure to intervene, in

violation of Section 1983, as to all State Defendants; violations of the reasonable accommodation

and disparate treatment provisions of Title II of the Americans with Disabilities Act (the

"ADA"); retaliation in violation of the ADA; and violations of the reasonable accommodation

and disability discrimination provisions of Section 504 of the Rehabilitation Act of 1973.

Leckie's ADA and Rehabilitation Act claims are brought against the Doe State employees

responsible for disability accommodation.  (Leckie II Cmplt. (Dkt. No. 5) at 11-21)

   In Leckie I, Judge Lehrburger recommends that Leckie's Monell claim and his

claims against the Doe Defendants be dismissed.  Judge Lehrburger recommends that

Defendants' motion otherwise be denied.  (R&R (Dkt. No. 129) at 57)

   In Leckie II, Judge Lehrburger recommends that Leckie's claims against

Defendant Napoli, the Doe Defendants, and the individual State Defendants in their official

capacities be dismissed.  He further recommends that Leckie's claims under the ADA, the

Rehabilitation Act, and New York state law be dismissed.  The R&R recommends that the State

Defendants' motion to dismiss otherwise be denied.  (Id. at 58)

   The R&R also recommends that Leckie's motion to consolidate be granted, and

that the State Defendants' motion to transfer be denied.  (Id. at 10-18)

   In their objections to the R&R, the State Defendants contend that their motion to

dismiss Leckie's Section 1983 claims against Defendants Hyatt and Laguio should be granted

because (1) Leckie has not adequately pled deliberate indifference to a serious medical need as to

Hyatt and Laguio; and (2) Hyatt and Laguio are entitled to qualified immunity.  (Def. Objs. (Dkt.

No. 40))

**DISCUSSION**

I.    **LEGAL STANDARDS**

    A.    **Review of a Magistrate Judge's Report and Recommendation**

        A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

        Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865

(LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell

Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v.

Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also

Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a

report and recommendation for clear error where objections are merely perfunctory responses,

. . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and

citations omitted)).

   Moreover, a party cannot invoke de novo review by citing new facts or making

new arguments that the party could have raised in the briefing before the magistrate judge but did

not.  See Bolling v. City of New York, No. 18CIV5406PGGRWL, 2021 WL 961758, at *6

(S.D.N.Y. Mar. 15, 2021) ("[D]istrict courts 'will ordinarily refuse to consider evidentiary

material that could have been, but was not, presented to the magistrate judge in the first

instance.'") (quoting Brown v. Martuscello, No. 16-CV-6084 (CS)(PED), 2019 WL 3491461, at

*2 (S.D.N.Y. Aug. 1, 2019)); United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y.

2019) (declining to consider a "'new argument[] raised in objections to a magistrate judge's

report and recommendation that could have been raised before the magistrate but [was] not.'")

(quoting Hubbard v. Kelley, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

### B.   Rule 12(b)(1) Motion to Dismiss

   "[A] federal court generally may not rule on the merits of a case without first

determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter

jurisdiction). . . ." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31

(2007).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v.

United States, 201 F.3d 110, 113 (2d Cir. 2000).  Where subject matter jurisdiction is challenged,

a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) (citing Makarova, 201 F.3d at 113).

In reviewing a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id. A court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03-CV-597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

**C.    Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," (Id. at 555), and a plaintiff's claims must be "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
Iqbal, 556 U.S. at 678.

       "Where a complaint pleads facts that are 'merely consistent with' a defendant's
liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"
Id. (quotation marks omitted) (quoting Twombly, 550 U.S. at 557)  Moreover, where "the
allegations in a complaint, however true, could not raise a claim of entitlement to relief,"
Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from
conceivable to plausible, the[] complaint must be dismissed."  Id. at 570.  "Nor does a complaint
suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556
U.S. at 678 (quoting Twombly, 550 U.S. at 557).  A complaint must provide factual allegations
sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it
rests."  Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007)
(citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice [to establish entitlement to relief]."
Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

       In resolving a motion to dismiss, a court may "consider . . . the complaint and
any documents attached thereto or incorporated by reference and documents upon which
the complaint relies heavily."  Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678
F.3d 184, 187 (2d Cir. 2012) (quotation marks and citation omitted).  However, "[w]here . . . the
allegations pled in the complaint are contradicted by documents on which the complaint relies[,]
the reviewing court need not accept as true an allegation pled nor draw inferences in its favor."
Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York, 107 F. Supp. 3d 323, 331
(S.D.N.Y. 2015), aff'd sub nom. Alexander v. Bd. of Educ. of City of New York, 648 F. App'x

118 (2d Cir. 2016) (quotation marks and citation omitted).  Moreover, allegations raised for the

first time in an opposition brief cannot defeat a motion to dismiss, because allegations in an

opposition brief do not amend a complaint.  See Capers v. Kirby Forensic Psychiatric Ctr., No.

13-CV-6953(AJN), 2016 WL 817452, at *2 (S.D.N.Y. Feb. 25, 2016) (citing O'Brien v. Nat'l

Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the

Complaint cannot be amended by the briefs in opposition to a motion to dismiss.")).

     **D.**    <u>**Motion to Transfer**</u>

       Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought or to any district or division to which all parties have

consented."  In the Second Circuit, courts apply a two-step analysis:  "[f]irst, the court must

determine whether the action could have been brought in the proposed transferee forum.  If so,

the court must determine whether convenience of the parties and witnesses and the interests of

justice favor transfer."  CVS Pharmacy, Inc. v. AstraZeneca Pharms. L.P., 2020 WL 4671659, at

*4 (S.D.N.Y. Aug. 12, 2020).  In making this determination, courts consider the following

factors:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus
> of  operative facts; (4) the availability of process to compel the attendance of the
> unwilling  witnesses; (5) the location of relevant documents and the relative ease
> of access to sources of proof; (6) the relative means of the parties; (7) the forum's
> familiarity with the governing law; (8) the weight accorded to the plaintiff's
> choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the
> totality of circumstances.

Salaam v. City of New York, 2021 WL 3077555, at *2 (S.D.N.Y. May 27, 2021) (citing Keitt v.

New York City, 882 F. Supp. 2d 412, 458-59 (S.D.N.Y. 2011)).

       "The party requesting the transfer bears the burden of making a 'strong case for

transfer.'"  Megna v. Biocomp Labs., 220 F. Supp. 3d 496, 497 (S.D.N.Y. 2016) (quoting New

York Marine and Gen. Ins. Co. v. Lafarge North America, Inc., 599 F.3d 102, 113 (2d Cir. 2010)).

### E.    Motion to Consolidate

Fed. R. Civ. P. 42(a) provides that a district court may consolidate "actions before the court involv[ing] a common question of law or fact." "'A determination on the issue of consolidation is left to the sound discretion of the Court,'" In re UBS Auction Rate Sec. Litig., No. 08 Civ. 2967 (LMM), 2008 WL 2796592, at *1 (S.D.N.Y. July 16, 2008) (quoting Albert Fadem Trust v. Citigroup Inc., 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002)), and involves weighing considerations of convenience, judicial economy, and cost reduction while ensuring that the "paramount concern for a fair and impartial trial" is honored.  Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990).

## II.    ANALYSIS

### A.    Leckie's Motion to Consolidate

Leckie moves to consolidate any surviving claims in the instant actions:

> [Leckie II] should be consolidated with [Leckie I], both pending before Your Honor, as they both involve common questions of law and facts.  Both cases relate to [Leckie]'s dental treatment from April 24, 2018 until December 20, 2018, while [he] went back and forth between City . . . and State . . . custody. Specifically, in both cases, [P]laintiff alleges that the City and the State [D]efendants were deliberately indifferent to his medical needs, which resulted in substantial delay of approximately six . . . months, causing severe and permanent injuries.

(Leckie II Pltf. Opp. (Dkt. No. 36) at 10)

The R&R recommends granting the motion to consolidate.  Judge Lehrburger notes that "[a] federal court may consolidate actions before it if they 'involve a common question of law and fact.'  'Consolidation is warranted where it promotes judicial economy and serves to eliminate the waste associated with duplicative discovery and multiple trials, and the danger of

13

inconsistent verdicts.'"  (R&R (Dkt. No. 129) at 10 (quoting Fed. R. Civ. P. 42(a)(2) and Stevens v. Hanke, No. 20-CV-4765, 2022 WL 489054, at *2 (S.D.N.Y. Feb. 17, 2022)))  Judge Lehrburger finds that consolidation is appropriate here because (1) "both cases raise the common question of whether Leckie's medical condition was sufficiently serious to form the basis for claims under § 1983"; (2) "[b]oth actions implicate facts culminating in the same injury, raising overlapping questions of causation"; (3) "discovery efforts already undertaken in Leckie I will be useful in resolving Leckie II"; and (4) "the State Defendants do not object to consolidation beyond their contention that Leckie II should be transferred to the Northern District."  (Id. at 11-12)

No party has objected to Judge Lehrburger's recommendation regarding consolidation. Accordingly, this Court reviews Judge Lehrburger's recommendation for clear error.  See Gilmore, 2011 WL 611826, at *1.  The Court agrees with Judge Lehrburger that both complaints "involve a common question of law or fact," Fed. R. Civ. P. 42(a) – i.e., the seriousness of Plaintiff's medical condition and the adequacy of the treatment he received – such that consolidation will "promote[] judicial economy and serve[] to eliminate the waste associated with duplicative discovery and multiple trials, and the danger of inconsistent verdicts."  Stevens, 2022 WL 489054, at *2.  Accordingly, there is no clear error in the recommendation.  This Court will adopt the recommendation and grant Plaintiff's motion to consolidate.

### B.  The State Defendants' Motion to Transfer

The State Defendants have moved to transfer "any surviving claims . . . to the Northern District of New York."  They argue that transfer is appropriate because (1) "substantially all the evidence and all the witnesses relating to the incident would be found in Ulster Correctional Facility, which is located in the Northern District of New York"; (2) "[a]t the time of the alleged incident, Defendants were performing their official duties by rendering

treatment to Plaintiff while he was housed at Ulster Correctional Facility"; (3) "three of the four

[State] Defendants still perform their official duties in correctional facilities in the Northern

District of New York, and only one [Rakib] currently performs his official duties in the Southern

District of New York"; (4) "the witnesses to the events, alleged to have occurred at Ulster

Correction[al] Facility, also likely reside in the Northern District of New York"; and (5) "'the

fact that a claim . . . against [the City Defendants] arose in [the Southern] [D]istrict does not

make that district a proper venue for other parties as to whom the claim arose somewhere else.'"

(Leckie II Def. Br. (Dkt. No. 32) at 13-14 (quoting Wright & Miller, 15 Fed. Prac. & Proc. §

3807 (2d ed. 1986 & Supp. 2003)))  Judge Lehrburger recommends that the State Defendants'

motion to transfer be denied.

       Judge Lehrburger begins his analysis by summarizing the factors to be considered

for a discretionary change of venue:  "'inter alia:  (1) the plaintiff's choice of forum, (2) the

convenience of witnesses, (3) the location of relevant documents and relative ease of access to

sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the

availability of process to compel the attendance of unwilling witnesses, and (7) the relative

means of the parties.'" (R&R (Dkt. No. 129) at 13 (quoting Corley v. United States, 11 F.4th 79,

89 (2d Cir. 2021)))  Judge Lehrburger then notes that "[n]o party disputes that venue is proper in

the Southern District.  Accordingly, the applicable standard is that for a discretionary change of

venue."  (Id. at 14-15)

       Judge Lehrburger finds that "the plaintiff's choice of forum clearly weighs in

favor of the case remaining in this Court, as both actions were filed here, and Plaintiff opposes

the motion to transfer."  (Id. at 15)  As to convenience of the witnesses, Judge Lehrburger finds

that this factor "weighs against transfer," because witnesses located in the Northern District have

already been deposed, whereas Leckie "contemplates seeking testimony from medical providers who treated him for sepsis and dental abscess at Westchester Medical Center, which is located in the Southern District, . . . who have not yet been deposed." (Id. at 15-16)  As to the location of documents and access to sources of proof, Judge Lehrburger "finds [that] this factor til[ts] in favor of maintaining venue in the Southern District," because there has already been "substantial document discovery of Leckie's medical records and other documents" located in the Northern District, while records "pertaining to Leckie's treatment, and lack of treatment, while . . . in [City] custody . . . are located within the Southern District."  As to the convenience of the parties, Judge Lehrburger finds that this factor "is, at best for the State Defendants, a neutral factor," given that "Leckie resides in the Eastern District" and "[Defendant] Rakib at least works in the Southern District, while Laguio, Hyatt, and Napoli continue to work in the Northern District." (Id. at 16-17)  Regarding the need to compel unwilling witnesses, the R&R finds that this factor is neutral, because Leckie "may need to compel the testimony of witnesses at Westchester Medical Center," and "Defendants have already been willing to offer their witnesses for remote deposition." (Id. at 17)  Finally, as to the locus of operative facts, the R&R finds that, "after consolidation, the events occurring while Leckie was in [City] custody will be a second 'center of gravity'" in addition to the Northern District, and that in any event this factor is not "enough to disturb Leckie's choice of forum." (Id. at 17)  For all these reasons, the R&R recommends denying the motion to transfer.  (Id. at 17-18)

No party has objected to Judge Lehrburger's recommendation regarding the motion to transfer.  Accordingly, this Court reviews his recommendation for clear error.  See Gilmore, 2011 WL 611826, at *1.

This Court finds no clear error in Judge Lehrburger's analysis.  Because many of the parties, witnesses, and documents are located in or near the Southern District, and because the allegations concern events that occurred while Leckie was in City custody in the Southern District as well as in State custody in the Northern District, there is no basis for disturbing Leckie's choice of forum.  Accordingly, this Court will adopt Judge Lehrburger's recommendation, and the State Defendants' motion to transfer will be denied.

### C.     Motions to Dismiss Leckie's Section 1983 Deliberate Indifference Claims

#### 1.     Whether Leckie Has Stated a Claim for Deliberate Indifference Under Section 1983

##### a.     Defendants' Arguments

All Defendants but State Defendant Rakib have moved to dismiss Leckie's Section 1983 deliberate indifference claims, arguing that he has not alleged a sufficiently serious medical condition nor culpability on the part of Defendants.

###### i.     The City Defendants' Arguments

The City Defendants argue that "Plaintiff's SAC fails to plausibly allege that he was suffering from a serious medical condition," because Leckie "does not allege that his dental pain interfered with eating, sleeping or any other daily activities, nor does he articulate the severity or length of his alleged dental pain while in [City] custody."  (Leckie I Def. Br. (Dkt. No. 117) at 10)  According to Defendants, "Plaintiff's vague allegations that he was experiencing 'great pain' while in [City] custody [are] insufficient to establish a serious medical condition." (Id. (quoting Leckie I SAC (Dkt. No. 110) ¶ 25))

The City Defendants also argue that "Plaintiff did not plead reckless or intentional action (or inaction) by any individual defendant."  (Id. at 11)  As to Defendant Matthew, the City Defendants argue that "[P]laintiff concedes that [Matthew] took x-rays and ordered extraction of

tooth #31 on April 23, 2018."  According to Defendants, "Plaintiff . . . has failed to establish the personal involvement of Dr. Matthew beyond the initial dental consultation," and Plaintiff's claim that "'he continued to complain to [Defendants including Matthew] over the course of months about the great pain he was experiencing' . . . is insufficient to establish deliberate indifference by Dr. Matthew, [because] Plaintiff does not allege when he complained to Dr. Matthew, what he told Dr. Matthew about his dental condition, or how Dr. Matthew responded to these alleged complaints."  (Id. (quoting Leckie I SAC (Dkt. No. 110) ¶ 25))  The City Defendants further argue that, at the initial dental consultation, "Matthew recommended, and [P]laintiff refused, extraction of tooth #31."  (Id. (citing Apr. 24, 2018 Exam Notes (Dkt. No. 116-5))

        As to the culpability of the Doe Correction Officers and Medical Providers, the City Defendants argue that Leckie "relies on group pleading," and that "[c]omplaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim."  (Id. at 12 (quotation omitted))  They also argue that Leckie "fails to allege what actions, or inactions, by the John/Jane Doe [D]efendants directly contributed to his alleged deprivation of medical care," and that "[P]laintiff's inability to identify the John/Jane Doe correction officers and medical providers at this point in the litigation does not excuse the lack of factual allegations in the SAC."  (Id. at 13-14)

## ii.    The State Defendants' Arguments

        The State Defendants argue that "Plaintiff fails to state a claim against Defendants Napoli, Hyatt, or Laguio for deliberate indifference to medical needs."  (Leckie II Def. Br. (Dkt. No. 32) at 8)  As to Napoli, they state that "Plaintiff merely alleges that during his intake examination on August 30, 2018, Plaintiff informed Defendant Napoli of his jaw pain and that

she purportedly failed to refer him to a dental provider, [y]et in the very next paragraph Plaintiff acknowledges that he was examined by the dentist, Defendant Rakib, the very next day, August 31, 2018 . . . [who] took his x-rays, and noted that Plaintiff should be referred for an extraction of tooth 31."  (<u>Id.</u> at 8-9 (citing <u>Leckie II</u> Cmplt. (Dkt. No. 5) ¶¶ 29-32))  The State Defendants contend that "[t]he alleged one-day delay in seeing a dentist is the only 'delay' that could be charged to Defendant Napoli, and it is constitutionally <u>de minim[is]</u>, and does not evidence deliberate indifference in any event."  (<u>Id.</u> at 9)

As to Defendant Laguio, the State Defendants argue that – according to Leckie's Complaint – "the moment [Plaintiff] saw Dr. Laguio complaining of fever, nausea, and the inability to eat on October 19, 2018, Dr. Laguio immediately treated his conditions with antibiotics, and [Leckie] was then referred to a hospital only three days later when he did not respond to the initial antibiotic treatment."  (<u>Id.</u> at 9 (citing <u>Leckie II</u> Cmplt. (Dkt. No. 5) ¶¶ 41-44, 50))  The State Defendants further argue that "any alleged delay of treatment chargeable to Dr. Laguio . . . was <u>de minim[is]</u>"; that "the allegations, at most, reflect a difference of opinion [as to] whether beginning with a course of antibiotics was appropriate," which "does not implicate the Eighth Amendment"; and that "[e]ven assuming that the initial use of antibiotics was medically incorrect, it could amount only to medical malpractice."  (<u>Id.</u>)

As to Defendant Hyatt, the State Defendants characterize Plaintiff's Complaint as alleging "that Nurse Hyatt was deliberat[ely] indifferent to Plaintiff's medical needs because she failed to overrule the dentist, Defendant Rakib, when he allegedly delayed [referring Plaintiff for a tooth extraction]."  (<u>Id.</u> at 10 (citing <u>Leckie II</u> Cmplt. (Dkt. No. 5) ¶¶ 32, 34))  The State Defendants argue that "it would not be plausible to infer that Nurse Hyatt had the authority to make such a reference herself, or to overrule the examining dentist."  (<u>Id.</u>)  They also argue that

19

Plaintiff's "allegations that Nurse Hyatt did not refer Plaintiff to urgent care when he presented at [the] dental clinic with fever, nausea, and inability to eat on October 19, 2018, [are] similarly infirm," because "[t]he very next paragraph  in the Complaint states that Plaintiff was examined and treated by Dr. Laguio <u>later that very day</u>."  (<u>Id.</u> (emphasis in original))  According to the State Defendants, "Plaintiff's allegations . . . fail to establish that there was any delay [in treatment] chargeable to Defendant Hyatt, let alone one of constitutional significance, or that Defendant Hyatt possessed a 'sufficiently culpable state of mind.'"  (<u>Id.</u> (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)))

### b.  The R&R's Recommendations

The R&R recommends that the motion to dismiss Leckie's deliberate indifference claims against Defendants Matthew, Hyatt, and Laguio be denied, but that the motion to dismiss be granted as to Defendant Napoli and the Doe Defendants.[4]

### i.  Sufficiently Serious Medical Need

As to medical need, Judge Lehrburger notes that "untreated dental conditions have been considered serious medical conditions in this Circuit."  (R&R (Dkt. No. 129) at 24 (citing <u>Harrison v. Barkley</u>, 219 F.3d 132, 136-37 (2d Cir. 2000) ("[B]ecause a tooth cavity will degenerate with increasingly serious implication if neglected over sufficient time, it presents a serious medical need within the meaning of our case law.") (quotation omitted); <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) ("Any person who has spent a night tossing and turning in suffering from an abscessed tooth knows that dental pain can be excruciatingly

---

[4]  The R&R also recommends that the motion to dismiss Plaintiff's deliberate difference claim against State Defendant Rakib be denied.  (R&R (Dkt. No. 129) at 34-37)  As the State Defendants point out in their objections, however, "State Defendant Rakib did not move to dismiss Plaintiff's claims for medical indifference."  (Def. Objs. (Dkt. No. 40) at 3)  Accordingly, the R&R will not be adopted as to this recommendation.

severe."); Gonzalez v. McGue, No. 99-CV-3455, 2001 WL 13341, at *3 (S.D.N.Y. Jan. 5, 2001) (discussing failure to treat a "degenerative tooth cavity"); Dean v. Coughlin, 623 F. Supp. 392, 404) (S.D.N.Y. 1985) ("Inmates' [non-prophylactic] dental needs – for fillings, crowns, and the like – are serious medical needs as the law defines that term.")))  Judge Lehrburger finds that – given the applicable case law – "Leckie's allegations easily establish serious medical need at the time he was in custody of both [the City] and [the State]," because (1) while he was in City custody, Defendant Matthew "recognized that Leckie's tooth had deteriorated to the point of needing to be extracted"; and (2) while he was in State custody, "his condition was already sufficiently serious" when he arrived, and "only worsened from there," leading to "'severe mouth and jaw pain . . . high fever, nausea, and inability eat  . . . dental abscess and dental infection,'" and eventual sepsis and hearing loss.  (Id. at 25 (quoting and citing Leckie II Cmplt. (Dkt. No. 5) ¶¶ 27, 31-32, 35, 41, 44, 47, 49, 53))

As to the State Defendants' argument that Leckie's deliberate indifference claim amounts to no more than a delay in treatment (see Leckie II Def. Br. (Dkt. No. 32) at 9-10), Judge Lehrburger finds that "Leckie has pled facts sufficient to establish that the delay in treatment was sufficiently serious to state a claim for relief," because he "plausibly alleges that treatment was delayed or denied while in [State] custody for nearly two months," and that "[a]s a result of that delay, Leckie had to be hospitalized for sepsis and is left with permanent hearing loss from the infection originating in his tooth."  (R&R (Dkt. No. 129) at 26-27 (citing Mattison v. Johnson, No. 9:17-CV-1198, 2019 WL 6074039, at *5 (N.D.N.Y. Nov. 15, 2019); Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003); Christian v. Saunders, No. 17-CV-2587, 2018 WL 3300695, at *9-10 (S.D.N.Y. Feb. 28, 2018), report and recommendation adopted, 2018 WL 1441401 (S.D.N.Y. Mar. 22, 2018); Grimmett v. Corizon Medical Associates of New York, No.

15-CV-7351, 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017); and Gomez v. Westchester County, No. 12-CV-6869, 2015 WL 1054902, at *9 (S.D.N.Y. Mar. 10, 2015), aff'd, 649 F. App'x 93 (2d Cir. 2016)))

### ii.    The Defendants' Culpability

As to the culpability of City Defendant Matthew, Judge Lehrburger finds that – given that Dr. Matthew "[r]ecommend[ed] extraction" – he "knew, and at the very least should have known, that Leckie was suffering from a condition that posed an excessive risk to health or safety."  Accordingly, Plaintiff's allegation that Matthew "failed to follow up and failed to respond to a follow-up written request directed to him . . . suffice[s] to plausibly state a claim for deliberate indifference."  (Id. at 29-30 (citing Hayes v. Charles, No. 10-CV-00380, 2013 WL 4718497, at *6-7 (W.D.N.Y. Sept. 3, 2013) (defendant who failed to schedule a follow-up appointment to fill plaintiff's cavity for four months despite written request, and defendant who examined plaintiff but took no action to secure dental treatment or prescribe effective painkillers when plaintiff subsequently complained to him of pain, could be found to have acted with deliberate indifference)) (further citations omitted))

As to the City Defendants' argument "that Leckie initially refused the extraction that Dr. Matthew recommended," Judge Lehrburger notes that on a Rule 12(b)(6) motion to dismiss "the Court cannot consider the document submitted by Defendants [in support of this argument, as] it is not a document referenced in Leckie's complaint, one on which he relied, or [one] that falls under another exception that would permit the Court to consider a document outside the complaint."  (Id. at 30-31 (citing Kleinman v. Elan Corp., plc, 706 F.3d 145, 152 (2d Cir. 2013); and Nicosia v. Amazon.com, Inc., 834 F.3d 220, 234 (2d Cir. 2016)) (further citations omitted))

As to the culpability of State Defendant Napoli, however, Judge Lehrburger finds that Leckie's "allegations are insufficient to state a claim for deliberate indifference":  "The allegation that Napoli failed to refer Leckie to a dental provider is not plausible, as Leckie alleges in the very next paragraph of the Complaint that he was examined by dentist Dr. Rakib and dental hygienist Hyatt the following day."  (Id. at 33)  Judge Lehrburger further finds that Leckie's "allegations of ignored complaints and palliative care" as to Nurse Napoli are "conclusory" and "insufficient," because "Leckie does not plead Napoli's knowledge of the seriousness of his condition," and because "it is not reasonable to infer that Leckie would direct his complaints to, and receive follow-up care from, the nurse who performed his general intake examination, rather than the dental providers he saw thereafter."  (Id. at 33-34)  The R&R recommends that Plaintiff's deliberate indifference claim against Napoli be dismissed.

As to the culpability of State Defendant Hyatt, the R&R concludes that "[t]here are . . . sufficient facts to allege [her] deliberate indifference to Leckie's serious medical needs." In this regard, Judge Lehrburger notes that "Hyatt was present at Dr. Rakib's exams of Leckie and knew that he needed his tooth extracted[,]. . . . yet [s]he did nothing to ensure that occurred, even though Leckie continued to complain about pain, [and] even after seeing how his condition had deteriorated by October 19, 2018."  (Id. at 34 (citing Leckie II Cmplt. (Dkt. No. 5) ¶¶ 31-32, 35-36, 39, 41-43))  As to the State Defendants' argument that "[t]he allegation that Nurse Hyatt did not refer Plaintiff to urgent care when he presented at [the] dental clinic . . . on October 19, 2018 is . . . infirm . . . .  [because] [t]he very next paragraph in the Complaint states that Plaintiff was examined and treated by Dr. Laguio later that very day" (Leckie II Def. Br. (Dkt. No. 32) at 10 (emphasis in original)), Judge Lehrburger finds that "even if Hyatt referred Leckie to urgent care on October 19, 2018, that does not absolve her of liability for the period between when she

first saw Leckie on August 31, 2018 to when he saw Dr. Laguio over a month and a half later."
(R&R (Dkt. No. 129) at 35)  Judge Lehrburger rejects the State Defendants' argument that "it
would not be plausible to infer that Nurse Hyatt had the authority to make . . . a reference [to an
oral surgeon] herself, or to overrule the examining dentist [with respect to his decision not to
make a referral]" (Leckie II Def. Br. (Dkt. No. 32) at 10), because (1) "the facts as pled do not
indicate any need for Hyatt to 'overrule' her superior," given that the Complaint alleges that
Hyatt's supervisor, Rakib, "recognized that Leckie's tooth needed to be extracted"; and (2) "it is
no less reasonable to infer that a dental hygienist or nurse would be able to complete referrals on
behalf of the treating dentist."  (R&R (Dkt. No. 129) at 36 (citing Leckie II Cmplt. (Dkt. No. 5)
¶¶ 31-33, 35, 39; Iacovangelo v. Correctional Medical Care, Inc., 624 F. App'x 10, 13 (2d Cir.
2015); and Leniart v. Borchet, No. 3:20-CV-1098, 2020 WL 5765607, at *6 (D. Conn. Sept. 28,
2020)))  Judge Lehrburger concludes that, "[a]t the motion to dismiss stage, Leckie is entitled to
the reasonable inference that Hyatt could have taken some action to initiate a referral to a
surgeon; Hyatt's alleged lack of authority is therefore insufficient for her dismissal."  (Id.)

        As to the culpability of State Defendant Laguio, Judge Lehrburger rejects the
State Defendants' characterization of Leckie's claim as "involving merely a 'difference of
opinion' as to proper treatment."  He instead finds that Plaintiff "has plausibly established that
the care provided to him [by Dr. Laguio] was inadequate in light of the consistent determination
by several medical professionals that extraction of the infected tooth was the proper course of
treatment and Leckie's subsequent steep decline over the [days] following [his appointment with
Defendant Laguio]."  (Id. at 37-38)  And as to the State Defendants' argument that Leckie has
alleged, at most, malpractice by Laguio, the R&R finds that "the suggestion that Dr. Laguio
believed [Leckie's] condition [to be] benign violates the requirement on a motion to dismiss that

reasonable inferences be drawn in favor of the non-moving party"; "the inference Defendants

seek to draw is not plausible in light of Leckie's serious symptoms [and allegations

demonstrating that]. . . . Dr. Laguio . . . knew that the proper course of treatment was extraction

of the infected tooth, but chose 'an easier and less efficacious treatment plan.'" (Id. at 38

(quoting Chance, 143 F.3d at 703; citing Leckie II Cmplt. (Dkt. No. 5) ¶ 43)) Accordingly, the

R&R recommends denying the motion to dismiss the deliberate indifference claim against Hyatt

and Laguio. (Id. at 39)

    As to the City and State Doe Defendants, Judge Lehrburger concludes that

"Leckie fails to plead sufficient facts to allege . . . deliberate indifference," because he "asserts

[only] general allegations of complaints of pain and ignored requests for medical appointments –

and one instance of [City] Doe Corrections Officers failing to produce him to a dental

appointment." Leckie does not plead "facts showing, or from which a reasonable inference

could be drawn, that any Doe Defendant was actually aware of the risk to his health . . . or should

have been so aware." The R&R therefore recommends dismissal of the deliberate indifference

claims "against the Doe Defendants in both Leckie I and Leckie II." (Id. at 39)

### c.  __The State Defendants' Objections__

    The State Defendants object to Judge Lehrburger's recommendation that their

motion to dismiss be denied as to the deliberate indifference claims against Laguio and Hyatt.

    As to Laguio, the State Defendants complain that Judge Lehrburger "incorrectly

concludes that [he] is somehow responsible for every alleged delay in providing treatment to

Plaintiff while he was in [State] custody. . . . The first time State Defendant Laguio, who is not a

dentist, treated Plaintiff for his tooth infection was October 19, 2018, and he provided treatment,

antibiotics, and pain medication on the same day. There was thus no delay in treatment

chargeable to State Defendant Laguio." (Def. Objs. (Dkt. No. 40) at 4-5)

The State Defendants also argue that the "'relatively short three-day delay' between the time that Plaintiff saw State Defendant Laguio . . . and the time when he was transferred to an outside hospital . . . [does not] constitute a sufficiently serious delay in treatment." "[U]nlike all cases relied upon by the R&R for this proposition, Dr. Laguio did provide treatment for Plaintiff's infection during this three-day period." (Id. at 5 (quoting R&R (Dkt. No. 129) at 27))

Finally, the State Defendants argue that "[t]here are no non-conclusory allegations to show that State Defendant Laguio treated Plaintiff prior to October 19, 2018, or that he was aware that hospitalization and emergency tooth extraction [were] required, rather than a course of antibiotics for the infection. State Defendant Laguio is not even a dentist. . . . [Plaintiff's allegations] constitute[] only a disagreement in the course of treatment, which does not rise to the level of an Eighth Amendment violation." (Id.)

The State Defendants' objections regarding Laguio repeat arguments made in their motion papers. (Leckie II Def. Br. (Dkt. No. 32) at 9) Accordingly, this portion of the R&R will be reviewed only for clear error. See Phillips, 955 F. Supp. 2d at 211.

As to Hyatt, the State Defendants argue that the R&R "erroneously charges her with a two-month delay of treatment [of] Plaintiff. However, as stated in [the State] Defendants' motion to dismiss, State Defendant Hyatt is a dental hygienist and not a dentist, and she "was only present during Plaintiff's examination[s] by State Defendant Rakib on August 31, 2018 and October 12, 2018. . . . Hyatt referred Plaintiff to be seen by a medical provider on the same day he presented with complaints on October 19, 2018." (Id. at 6 citing (R&R (Dkt. No. 129) at 26-28)) The State Defendants contend that Plaintiff's "allegations . . . are insufficient to show that [Hyatt] was deliberatively indifferent to Plaintiff's medical needs . . . . Hyatt did not have the

training to make medical decisions," and "referred [Leckie] to State Defendant Laguio for treatment on October 19, 2018, the same day that she saw him."  (Id.)

The State Defendants' objections regarding Hyatt will be reviewed only for clear error because (1) the delay in treatment argument was made in the State Defendants' moving papers (see Leckie II Def. Br. (Dkt. No. 32) at 10); and (2) the lack of training argument is improperly raised for the first time on appeal.  See Phillips, 955 F. Supp. 2d at 211; Gladden, 394 F. Supp. 3d at 480.

There are no objections to the R&R's other recommendations concerning Plaintiff's deliberate indifference claims.  Accordingly, those recommendations will likewise be reviewed only for clear error.  See Gilmore, 2011 WL 611826, at *1.

### d.   Analysis

As to Defendant Laguio, the R&R correctly finds that Plaintiff adequately alleges that (1) "Dr. Laguio knew from [Leckie's] medical records that [Leckie's] infected tooth needed to be, and had not yet been, extracted, but nonetheless only prescribed antibiotics and returned Leckie to the general prison population with no monitoring or plan to actually refer him to an oral surgeon for the extraction" (R&R (Dkt. No. 129) at 37 (citing Leckie II Cmplt. (Dkt. No. 5) ¶¶ 43, 44, 46)); and (2) after Dr. Laguio decided to only prescribe antibiotics, "[w]ithin days, Leckie's already serious infection spread to his blood, requiring hospitalization."  (Id.; see Leckie II Cmplt. (Dkt. No. 5) ¶¶ 46-47 ("Defendant Laguio returned Plaintiff to the general population, where his condition further deteriorated . . . .  Thereafter, on Monday, October 22, 2018, Plaintiff still had a high fever, his neck had become swollen, and he was unable to move his jaw."))  And contrary to the State Defendants' Objections, Judge Lehrburger cites Second Circuit law in support of his conclusion that inefficacious treatment can amount to deliberate indifference.  (R&R (Dkt. No. 129) at 38-39 (citing Williams v. Vincent, 508 F.2d 541, 544 (2d

Cir. 1974) (decision by "prison medical officials merely to stitch the stump of [plaintiff's] ear" rather than "sewing the severed portion of the ear back on" could amount to deliberate indifference)))  In sum, there is no error in Judge Lehrburger's determination that Plaintiff has pled facts sufficient to show that Defendant Laguio knew that Leckie's tooth had to be extracted, that Laguio's decision to instead prescribe antibiotics can plausibly be construed as deliberate indifference, and that the resulting delay in the extraction of Leckie's infected tooth led to sufficiently serious complications so as to provide a basis for liability.

As to Defendant Hyatt, the Leckie II Complaint alleges that she knew as early as August 31, 2018 "that Plaintiff must be referred to an oral surgeon for extraction of tooth #31" and that she was consistently kept apprised of Leckie's condition, but that Hyatt never referred Leckie for a tooth extraction.  (Leckie II Cmplt. (Dkt. No. 5) ¶¶ 31-42)  The State Defendants' argument that Hyatt referred Leckie to Laguio on October 19, 2018 – the same day she saw him – is thus not persuasive.  As Judge Lehrburger points out, "[t]he eleventh-hour referral (to a non-dentist) is of no moment in light of the earlier repeated failures to refer Leckie for the treatment that Dr. Rakib and Hyatt knew he needed."  (R&R (Dkt. No. 129) at 35-36)  As to Hyatt's objection that she lacked the training necessary to know that a referral for an extraction was indicated, at this stage of the litigation she cannot overcome Leckie's well-pled allegation that, regardless of her educational background, "Hyatt noted that Plaintiff must be referred to an oral surgeon."  (Leckie II Cmplt. (Dkt. No. 5) ¶ 32)  This Court cannot find as a matter of law that a dental hygienist would not recognize the need to have an infected tooth extracted.  Accordingly, this Court finds no error in the R&R's recommendation as to Hyatt, and will adopt it.

As to Matthew, Napoli, and the Doe Defendants – given Judge Lehrburger's detailed analysis of Plaintiff's allegations and his application of Second Circuit case law – this Court finds no clear error, and will adopt his recommendations.

In sum, this Court adopts all of the R&R's recommendations as to Plaintiff's deliberate indifference claims.  The motion to dismiss will be granted as to Napoli and the Doe Defendants, but otherwise denied.

### 2.    Whether the State Defendants Are Entitled to Dismissal on Qualified Immunity Grounds

The State Defendants argue that "Defendants Napoli, Hyatt, and Laguio are, at a minimum, entitled to qualified immunity."[5]  (Leckie II Def. Br. (Dkt. No. 32) at 10)  According to the State Defendants, "[t]he issues on qualified immunity are:  (1) whether Plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether the right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  (Id. (quoting Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013))

As to these three elements – and without citing any supporting case law – the State Defendants assert that "Plaintiff has not alleged a constitutional violation against these defendants"; that "[a] reasonable official[] in the position of Defendant Nurse[] . . . Hyatt could have believed that [his or her] alleged 'delay' in scheduling Plaintiff to see a medical provider – a delay counted in hours – did not violate the Constitution"; and that "a reasonable official in Defendant Laguio's position could have believed that first attempting to treat Plaintiff's jaw

---

[5]  Having concluded above that Plaintiff's allegations as to Napoli are insufficient, this Court does not conduct a qualified immunity analysis as to her.  See Rosado v. Vill. of Goshen, No. 7:16-CV-6916 (NSR), 2019 WL 1437522, at *9 (S.D.N.Y. Mar. 31, 2019) ("Given that Plaintiff has failed to state a valid claim, the issue of qualified immunity is moot.").

condition with antibiotics, and referring hi[m] to a hospital three days later when he failed to improve, did not violate Plaintiff's constitutional rights." (Id. at 11)

Judge Lehrburger concludes that Hyatt and Laguio are not entitled to qualified immunity as a matter of law.  In so concluding, Judge Lehrburger notes that "it is well-established by the Supreme Court and in this Circuit that [a] failure to treat, or [a] delay in treating, a degenerative medical or dental condition can suffice to state a § 1983 claim.  Despite the clearly established law to the contrary, and as alleged by Leckie, Defendants . . . Hyatt, and Laguio failed to act to ensure Leckie received the tooth extraction that all were aware he needed to resolve his pain and infection." (R&R (Dkt. No. 129) at 45 (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Harrison, 219 F.3d at 139; Chance, 143 F.3d at 702-04; Grimmett v. Corizon Med. Assocs. of New York, No. 15CV7351JPOSN, 2017 WL 2274485, at *4-5 (S.D.N.Y. May 24, 2017); Dean, 623 F. Supp. at 402))  Judge Lehrburger further finds that "[b]ecause an incarcerated person's right to adequate medical care (including dental care) is clearly established, and the facts alleged indicate [that] Defendants . . . Hyatt and Laguio did not act objectively reasonably in light of that clearly established law, qualified immunity does not serve as a basis for dismissal." (Id. (citing Harrison, 219 F.3d at 136; Kearsey v. Williams, No. 99-CV-8646, 2005 WL 2125874, at *7 (S.D.N.Y. Sept. 1, 2005)))

The State Defendants object to the R&R's finding on qualified immunity as to Hyatt and Laguio.  They argue that "the R&R's recommendation to deny qualified immunity to State Defendants Hyatt and Laguio rests upon a definition of the clearly established right regarding adequate medical care in impermissibly broad terms." (Def. Objs. (Dkt. No. 40) at 7) The State Defendants also assert that

> in their motion to dismiss, State Defendants Hyatt and Laguio essentially argued
> that to defeat their qualified immunity defense, Plaintiff must point to clearly

established precedent from the Supreme Court or Second Circuit, or other persuasive authority, that established that: (1) State Defendant Hyatt could have believed that her alleged 'delay' in scheduling Plaintiff to see a medical provider – a delay counted in hours – violated the Constitution, or (2) that a reasonable official in Defendant Laguio's position could have believed that first attempting to treat Plaintiff's jaw condition with antibiotics and referring Plaintiff to a hospital three days later when he failed to improve, violated Plaintiff's constitutional rights.  No such precedent exists.  Plaintiff's contentions amount to no more than a disagreement about the course of treatment, which does not implicate the Constitution.

(Id. at 7-8)

Despite this assertion, the State Defendants did not argue – either "essentially" or otherwise – that "Plaintiff must point to clearly established precedent from the Supreme Court or Second Circuit, or other persuasive authority, that established that: (1) State Defendant Hyatt could have believed that her alleged 'delay' in scheduling Plaintiff to see a medical provider – a delay counted in hours – violated the Constitution, or (2) that a reasonable official in Defendant Laguio's position could have believed that first attempting to treat Plaintiff's jaw condition with antibiotics and referring Plaintiff to a hospital three days later when he failed to improve, violated Plaintiff's constitutional rights."  (Def. Objs. (Dkt. No. 40) at 7; compare Leckie II Def. Br. (Dkt. No. 32) at 11 (arguing that reasonable officials in Hyatt's and Laguio's positions could have believed their alleged actions were constitutional, but not arguing – as the State Defendants now contend – that it was Plaintiff's burden to identify cases indicating that reasonable officials in Hyatt's and Laguio's positions would have believed that their alleged actions were unconstitutional))  Accordingly, Defendants have presented a new argument for the first time in an objection, which warrants only clear error review.  See Gladden, 394 F. Supp. 3d at 480.

As Judge Lehrburger notes – and contrary to the State Defendants' burden argument – (1) "[s]ince qualified immunity is an affirmative defense, [D]efendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing

at that time," <u>Varrone v. Bilotti</u>, 123 F.3d 75, 78 (2d Cir. 1997); and (2) "refus[ing] treatment of

a properly diagnosed [dental] condition that was progressively degenerative, potentially

dangerous and painful, and that could be treated easily and without risk" constitutes deliberate

indifference.  <u>Harrison</u>, 219 F.3d at 139; <u>accord</u> <u>Chance,</u> 143 F.3d at 703 ("A cognizable claim

regarding inadequate dental care, like one involving medical care, can be based on various

factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of

treatment, or the inability to engage in normal activities.") (citations omitted).  (R&R (Dkt No.

129) at 44-45)  The State Defendants have not shown that Hyatt and Laguio's alleged actions are

objectively reasonable in light of this clearly established precedent; instead, they merely, and

incorrectly, assert that Leckie's allegations plead only a "difference of opinion."  "[A]t [the]

motion to dismiss stage, [this] [C]ourt [cannot] say as a matter of law that [D]efendant[s']

actions were objectively reasonable," <u>JG & PG ex rel. JGIII v. Card</u>, No. 08 CIV. 5668 (KMW),

2009 WL 2986640, at *8 (S.D.N.Y. Sept. 17, 2009) (citation omitted), either as to Hyatt's failure

to refer Leckie for a tooth extraction or as to Laguio's delay in referring Leckie to an oral

surgeon and his decision to prescribe antibiotics instead.  For these reasons, this Court finds no

clear error in the R&R's recommendation, and will adopt it.

     **D.**    **Defendants' Motions to Dismiss Leckie's Other Claims**

        There are no objections to the R&R's recommendations regarding other aspects of

Defendants' motions to dismiss.  Summarized below are Defendants' arguments and the R&R's

corresponding recommendations.

     **1.**    **Leckie's Failure to Intervene Claims**

        The City Defendants move to dismiss Plaintiff's failure to intervene claim,

arguing that "Plaintiff's allegation that 'those defendants who were present but did not actively

participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to

prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene'
is conclusory and insufficient to sustain a failure to intervene claim." (Leckie I Def. Br. (Dkt.
No. 117) at 18 (quoting Leckie I SAC (Dkt. No. 110) ¶ 51))

Only the City Defendants moved to dismiss Leckie's failure to intervene claim.
(Leckie I Def. Br. (Dkt. No. 117) at 18; compare Leckie II Def. Br. (Dkt. No. 32) at 2, passim)
As to Defendants Matthew, Rakib, Hyatt, and Laguio – the Defendants against whom Leckie's
deliberate indifference claims survive – Judge Lehrburger recommends that "Leckie's failure to
intervene claims . . . be construed as being pled in the alternative."  "At a later juncture, Leckie
will have to specify which Defendants will be subject to trial under which theory," but at the
motion to dismiss stage, "courts allow causes of action for direct participation and failure to
intervene to be pled in the alternative where a plaintiff has sufficiently pled a constitutional
violation, with the caveat that the plaintiff later specify which defendants he seeks to hold liable
for the direct constitutional violation versus which he seeks to hold liable for failure to
intervene." (Id. at 40-41 (citing Buari v. City of New York, 530 F. Supp. 3d 356, 393 (S.D.N.Y.
2021); Lanorith v. Truscelli, No. 15-CV-617, 2017 WL 3634600, at *13 (E.D.N.Y. Aug. 22,
2017); and Cumberbatch v. Port Authority of New York & New Jersey, No. 03 CIV. 749, 2006
WL 3543670, at *11 (S.D.N.Y. Dec. 5, 2006)))

As to Defendant Napoli and the Doe Defendants, however, the R&R recommends
that Plaintiff's failure to intervene claims be dismissed.  Judge Lehrburger finds that "[t]he
complaint does not establish that Napoli had a reasonable opportunity to intervene or that she
was aware of the need for Leckie's tooth to be extracted or that the other Defendants were failing
to provide the needed treatment."  As to the Doe Defendants, Judge Lehrburger concludes that
"[t]he allegations are impermissibly conclusory and fail to plead facts that would allow a

reasonable inference that any Doe Defendant was present when the named Defendants failed to provide medical care and had the opportunity to intervene." (Id. at 42-43)

This Court finds no error in Judge Lehrburger's conclusions.

### 2.   Leckie's *Monell* Claims

The City Defendants move to dismiss Plaintiff's Monell claims against the City and Health & Hospitals.  They contend that "[P]laintiff does not plead any facts demonstrating that he suffered a constitutional violation by any individual defendant" (Leckie I Def. Br. (Dkt. No. 117) at 15), and that "[P]laintiff does not plausibly allege that the alleged deprivations were caused by a policy or practice attributable to [t]he City or [Health & Hospitals]." (Id. at 16)  And while acknowledging that "a court may infer a municipal policy from acts or omissions of the municipality's policymakers," they argue that "[P]laintiff does not refer to any specific incidents, other than Mr. Leckie's, to establish a custom that resulted in the deprivation of medical care to inmates that resulted in civil rights violations."  They further contend that "[P]laintiff does not claim that any of the individual defendants were acting as final policymakers when they rendered care to Mr. Leckie." (Id. at 16-17)  Finally, they argue that "[P]laintiff does not sufficiently allege a causal connection between the alleged custom or policy of providing inadequate medical care and [P]laintiff's injuries." (Id. at 17)

In analyzing Plaintiff's Monell claim, Judge Lehrburger notes that Plaintiff alleges that the City and Health & Hospitals "adopted policies of:  '(i) ignoring the medical complaints of inmates; (ii) failing to order/perform necessary medical procedures; [and] (iii) subjecting inmates to cruel and unusual treatment in allowing inmates to suffer from readily treatable medical/ dental conditions.'" (R&R (Dkt. No. 129) at 36 (quoting Leckie I SAC (Dkt. No. 110) ¶ 68))

He then sets out the standard for Monell liability:

34

> To prevail on claims of municipal liability under § 1983, "a plaintiff must identify the existence of a municipal policy or practice that caused the alleged constitutional violation.  A plaintiff must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice." . . . . To prove the existence of a municipal policy or custom, a plaintiff may allege:  "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." . . . . "Proof of a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."

(Id. at 46-47 (quoting Mitchell v. City of New York, 841 F.3d 72, 80 (2d Cir. 2016) (in turn

citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978)); Johnson v. City of New

York, No. 06-CV-9426, 2011 WL 666161 at *3 (S.D.N.Y. Feb. 15, 2011) (citations omitted);

and Williams v. City of New York Department of Correction, No. 19-CV-9528, 2020 WL

3893929, at *6 (S.D.N.Y. July 10, 2020) (further quotation omitted)))

Judge Lehrburger goes on to find that "Leckie only provides conclusory

allegations of the existence of an unconstitutional policy of denying incarcerated people adequate

dental care, with no specific facts beyond his own experience.  He does not allege that the

incidents that happened to him happened to others, or that the Defendants have been responsible

for similar violations in the past, and so the facts pled are insufficient to impose municipal

liability."  (Id. at 47)  Judge Lehrburger also rejects Leckie's argument that the Court should

"find[] municipal liability based upon the allegation of a single incident in the context of custom

and usage and failure to train and supervise" (Leckie I Pltf. Opp. (Dkt. No. 120) at 20), because

(1) "the SAC does not include a claim for failure to supervise," and (2) "[t]he brief and

conclusory allegations in the SAC come nowhere near plausibly alleging facts that could . . .

'demonstrate that a municipality's failure to train amounts to deliberate indifference to the rights

of those with whom municipal employees will come into contact,'" as required to make out a

<u>Monell</u> claim for failure to train or supervise.  (R&R (Dkt. No. 129) at 47-48 (quoting

<u>Chamberlain v. City of White Plains</u>, 986 F. Supp. 2d 363, 391 (S.D.N.Y. 2013)))

This Court finds no error in Judge Lehrburger's conclusions regarding Leckie's

<u>Monell</u> claim.

### 3.      Section 1983 Claims Against Individual<br>Defendants in their Official Capacities

The State Defendants argue that Leckie's Section 1983 claims against them in

their official capacities "are treated as claims against the State itself and are barred" by the

Eleventh Amendment.  (<u>Leckie II</u> Def. Br. (Dkt. No. 32) at 7 (citing <u>Pennhurst Interstate Sch. &</u>

<u>Hosp. v. Halderman</u>, 465 U.S. 89 (1984); <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); and <u>Will v.</u>

<u>Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989)))  In response, Leckie "agrees to

withdraw claims made against the State Defendants within their official capacities only."

(<u>Leckie II</u> Pltf. Opp. (Dkt. No. 36) at 22)  The R&R therefore deems these claims "[a]bandoned"

and recommends that "claims under § 1983 against the individual State Defendants in their

official capacities . . . be dismissed."  (R&R (Dkt. No. 129) at 49)

This Court finds no error in Judge Lehrburger's recommendation.

### 4.      Leckie's Claims under the ADA and Rehabilitation Act

The State Defendants move to dismiss Leckie's claims under the ADA and the

Rehabilitation Act.  (<u>Leckie II</u> Def. Br. (Dkt. No. 32) at 11-12; <u>Leckie II</u> Cmplt. (Dkt. No. 5) ¶¶

80-117)  According to the State Defendants, Leckie's claims for declaratory and injunctive relief

under these statutes are moot, and he lacks standing to bring such claims, because he was

released from State custody before asserting these claims in the <u>Leckie II</u> Complaint.  (<u>Leckie II</u>

Def. Br. (Dkt. No. 32) at 11 ("Plaintiff pleads that he was released from [State] custody before

the complaint was filed, and he thus lacks standing to seek injunctive relief relating to his

incarceration.  At a minimum, Plaintiff's release has rendered any such claims moot.") (citing

Amador v. Superintendents, No. 03 Civ. 650, 2005 WL 2234050, at *5 (S.D.N.Y. Sept. 13,

2005); City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983); and Verley v. Wright, No. 2

Civ. 1182, 2007 WL 2822199, at *9 (S.D.N.Y. Sept. 27, 2007)))

   As to Leckie's claim for damages under the ADA and the Rehabilitation Act, the

State Defendants argue that "'[n]either Title II of the ADA nor § 504 of the Rehabilitation Act

provides for individual capacity suits against state officials.'  These claims against Defendants,

therefore, should be dismissed because Plaintiff cannot seek money damages against individual

Defendants."  (Leckie II Def. Br. (Dkt. No. 32) at 12 (quoting Garcia v. S.U.N.Y. Health

Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001)))  In the alternative, the State

Defendants argue that "Plaintiff makes no factual allegations whatsoever against these

Defendants to show that they discriminated against him because of a disability, that they

personally failed to reasonably accommodate him, or that they retaliated against him."  (Id.)

   Judge Lehrburger concludes that Leckie's ADA and Rehabilitation Act claims

should be dismissed.  As to Leckie's request for declaratory and injunctive relief, Judge

Lehrburger notes that "[i]njunctive relief . . . is generally rendered moot when a prisoner is

released from incarceration," and that "[t]he same is true for claims of declaratory relief."  (R&R

(Dkt. No. 129) at 49-50 (citing Khalil v. Laird, 353 F. App'x 620, 621 (2d Cir. 2009), and

Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006)))  As to Leckie's "argu[ment] that

injunctive and declaratory relief would not be moot in the event he is re-incarcerated during the

pendency of his case," Judge Lehrburger correctly rejects this argument as "speculative."  (Id. at

50 (citing Leckie II Pltf. Opp. (Dkt. No. 36) at 20))

As to Leckie's claim for damages, the R&R recommends dismissing those claims as not cognizable against the State Defendants, because "money damages are not an available remedy against individual defendants under Title II of the ADA or Section 504 of the Rehabilitation Act." (Id. at 51 (citing Garcia, 280 F.3d at 107))

This Court finds no error in Judge Lehrburger's recommendation.

\*     \*     \*     \*

For the reasons stated above, this Court will adopt Judge Lehrburger's recommendations as to Leckie's failure to intervene claim, Monell claim, Section 1983 claims against the individual State Defendants in their official capacities, and ADA and Rehabilitation Act claims.

### E.      Supplemental Jurisdiction Over Leckie's State Law Claims

The City Defendants argue that, "if no federal claims remain after motion practice, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims." (Leckie I Def. Br. (Dkt. No. 117) at 18 (capitalization altered))  The City Defendants do not address supplemental jurisdiction in the event that some or all of Leckie's federal claims survive.

The State Defendants argue that this Court lacks subject matter jurisdiction over Leckie's state law claims because, "[u]nder N.Y. Corrections Law § 24(1), so long as the alleged conduct of the corrections employees is within the scope of their employment and in the discharge of their official duties, a federal court may not entertain state-law claims for damages against the corrections employees.  Any such claims must be brought, if at all, as claims against the State itself in the New York State Court of Claims." (Leckie II Def. Br. (Dkt. No. 32) at 7 (citing Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996); N.Y. Corrections Law § 24(1))).

As to Leckie's surviving state law claims against the City Defendants –

negligence, medical malpractice, negligent infliction of emotional distress, and intentional

infliction of emotional distress (Leckie I SAC (Dkt. No. 110) ¶¶ 39-45, 54-65) – Judge

Lehrburger finds that the City Defendants have "provide[d] no argument to dismiss the[se] state

law claims," and recommends that this Court exercise supplemental jurisdiction over them.  In so

concluding, Judge Lehrburger notes that "the state law claims are not the focus of either the SAC

or the parties' briefing[,] . . . . [that] the tort claims alleged in the complaint do not involve novel

or complex issues of state law[,] . . . . [and that] judicial economy and convenience favor

exercising supplemental jurisdiction, [given that] essentially all of the same evidence and

witnesses would be relevant to both the federal and state law claims."  (R&R (Dkt. No. 129) at

53-54 (citing Blackrock Balanced Capital Portfolio v. HSBC Bank USA, National Association,

95 F. Supp. 3d 703, 709 (S.D.N.Y. 2015), and Mueller v. Long Island Railroad Co., No. 89 Civ.

7384, 1997 WL 189123, at *3 (S.D.N.Y. April 17, 1997)))

As to Leckie's state law claims against the State Defendants, the R&R notes that

Leckie "generally purports to bring an action pursuant to, inter alia, 'the laws of the State of New

York,' but does not allege any specific state law causes of action."  Judge Lehrburger finds that

this pleading deficiency "alone is [a] basis for dismissal of any purported state law claims."  (Id.

at 54 (quoting Leckie II Cmplt. (Dkt. No. 5) ¶ 1))  "[T]o the extent any state law claims are

alleged," the R&R recommends that they "be dismissed for lack of jurisdiction because N.Y.

Corrections Law § 24(1) provides that any such claims against corrections employees must be

brought against New York State itself in the New York State Court of Claims."  (Id. at 54-55)

The R&R rejects "Leckie's contention that a reasonable jury could possibly find the State

Defendants acted outside the scope of their employment" (Leckie II Pltf. Opp. (Dkt. No. 36) at

22-23), finding that "all of the acts and omissions alleged by Leckie against the individual State

Defendants occurred in the course of performing their jobs as medical professionals for [the

State]."  (R&R (Dkt. No. 129) at 56 (citing Davis v. McCready, 283 F. Supp. 3d 108, 123-24

(S.D.N.Y. 2017) ("Courts in the Second Circuit have long held that Section 24 precludes a

plaintiff from raising state law claims in federal court against state employees in their personal

capacities for actions arising within the scope of their employment."); Flint v. Jun, 541 F. Supp.

3d 284, 287-88 (W.D.N.Y. 2021) (same)))

No party has objected to the R&R's recommendations as to supplemental

jurisdiction, and this Court finds no clear error in Judge Lehrburger's recommendations, which

will be adopted.  Accordingly, this Court will exercise supplemental jurisdiction over the

surviving state law claims against the City Defendants, but will not exercise jurisdiction over the

state law claims against the State Defendants.

### F.      Whether Dismissal Should Be With or Without Prejudice

The R&R recommends that the following claims be dismissed without prejudice:

(1) the deliberate indifference and failure to intervene claims against the City Doe Defendants;

(2) Leckie's claims for declaratory and injunctive relief under the ADA and Rehabilitation Act,

"as the basis for dismissal is mootness"; (3) "all claims, if any, asserted under state law as

'Article III deprives federal courts of the power to dismiss a case with prejudice where federal

subject matter jurisdiction does not exist'"; and (4) the deliberate interference and failure to

intervene claims against the State Doe Defendants.  (R&R (Dkt. No. 129) at 57-59 (quoting

Hernandez v. Conriv Realty Associates, 182 F.3d 121, 123 (2d Cir. 1999)))

The R&R recommends that the following claims be dismissed with prejudice:  (1)

the Monell claims against the City and Health & Hospitals, because "[n]othing in the SAC (or

Leckie's previous pleadings) suggests – let alone plausibly pleads facts to support – a policy or

practice of deliberate indifference, failure to intervene, or the like with respect to detainees or prisoners in need of dental or medical care[,] . . . even though the City produced documentation of its policies and procedures"; (2) "the claims against Napoli, given that the allegations are that Leckie was seen the very next day by a dentist and there is no indication that Napoli had any further involvement"; (3) "claims for damages under the ADA and Rehabilitation Act, because the only defendants are individuals, and money damages against individual defendants are not an available remedy"; and (4) "all claims against [the State] Defendants in their official capacities[,] as Leckie has abandoned these claims and they are barred by the Eleventh Amendment." (Id.)

This Court concludes that Leckie's claims for declaratory and injunctive relief under the ADA and the Rehabilitation Act should be dismissed with prejudice, because the mootness of those claims cannot be cured in an amended complaint. See Pierce v. Fordham Univ., Inc., No. 15-CV-4589 (JMF), 2016 WL 3093994, at *7 (S.D.N.Y. June 1, 2016) (denying leave to amend because "'better pleading will not cure' the mootness of Plaintiff's claims against the Government Defendants") (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)), aff'd, 692 F. App'x 644 (2d Cir. 2017); Rodriguez v. Touchette, No. 5:19-CV-143-GWC-JMC, 2020 WL 2322615, at *7 (D. Vt. May 11, 2020) ("Because [plaintiff's] action is barred for mootness, failure to exhaust administrative remedies, and the doctrine of sovereign immunity, the defects in his Complaint cannot be cured by amendment."), report and recommendation adopted, No. 5:19-CV-143, 2020 WL 3896848 (D. Vt. July 9, 2020). The preclusive effect of this ruling is, of course, limited to the facts and analysis underlying the mootness determination. See Hell's Kitchen Neighborhood Ass'n v. Bloomberg, No. 05 CIV. 4806 (SHS), 2007 WL 3254393, at *6 (S.D.N.Y. Nov. 1, 2007) (construing prior discontinuance "with prejudice" on mootness grounds as limited to "the question decided therein, i.e., the mootness of the claims")

(quotation omitted); <u>Bank v. Spark Energy Holdings, LLC</u>, No. 13-CV-6130 ARR LB, 2014 WL 2805114, at *4-5 (E.D.N.Y. June 20, 2014) (same).

No party has objected to Judge Lehrburger's remaining recommendations on this point, which this Court will adopt.

<u>**CONCLUSION**</u>

For the reasons stated above, the R&R is adopted in part.  Defendants' motions to dismiss (<u>Leckie I</u>, Dkt. No. 115; <u>Leckie II</u>, Dkt. No. 31) are granted in part and denied in part as set forth above.  Leckie's motion to consolidate (<u>Leckie II</u>, Dkt. No. 35) is granted.  The State Defendants' motion to transfer venue (<u>Leckie II</u>, Dkt. No. 31) is denied.  The Clerk of Court is direct to consolidate 19 Civ. 6719 and 21 Civ. 7212, and to terminate the motions.  (19 Civ. 6719, Dkt. No. 115; 21 Civ. 7212, Dkt. Nos. 31, 35).

The Court will conduct a conference in these matters pursuant to Rule 16 of the Federal Rules of Civil Procedure on May 11, 2023, at 11:00 a.m., in Courtroom 705 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York.

Dated:  New York, New York
   May 1, 2023

       SO ORDERED.

       _____
       Paul G. Gardephe
       United States District Judge